# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| COASTAL MAINE BOTANICAL GARDENS, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) 2:17-cv-00493-JDL |
| TOWN OF BOOTHBAY, MAINE, | ) ) |
| Defendant, | ) ) |
| VAUGHN C. ANTHONY, et al., | ) ) |
| Intervenors. | ) |

## ORDER ON JOINT MOTION SEEKING APPROVAL OF CONSENT DECREE

This case arises from a dispute between Plaintiff Coastal Maine Botanical Gardens ("Coastal Maine") and Defendant Town of Boothbay (the "Town") over the Town's Board of Appeals' decision to rescind a development permit which was previously granted to Coastal Maine by the Town's Planning Board. Coastal Maine and the Town have submitted a Joint Motion for Entry of a Consent Decree (ECF No. 29).

## I. BACKGROUND

### A. The Parties

Coastal Maine filed its Complaint (ECF No. 1) against the Town in December 2017 asserting that the Town violated its procedural due process rights under the Fourteenth Amendment of the United States Constitution (Count I). The Complaint

also seeks review of a governmental action pursuant to the judicial review process established by Maine Rule of Civil Procedure 80B (Count II); alleges a violation of Coastal Maine's procedural due process rights under the Maine Constitution (Count III); and requests a declaratory judgment (Count IV). The Town filed a responsive Motion to Dismiss (ECF No. 9) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that the Complaint's procedural due process allegations fail to state a claim upon which relief can be granted. The Motion to Dismiss seeks the dismissal of the federal due process claim and also urges the Court to decline to exercise supplemental jurisdiction over the Complaint's remaining state law claims. *See* ECF No. 9 at 1; *see also* 28 U.S.C.A. § 1367(c)(3) (2018).

The Intervenors – Vaughn C. Anthony, Joanne A. Anthony, Kevin Anthony, and Jason C. Anthony (collectively, the "Anthonys") – own property that abuts Coastal Maine's property. Their unopposed Motion to Intervene (ECF No. 15) was granted by an Order entered March 5, 2018 (ECF No. 18). On March 22, the Anthonys filed a cross-claim against the Town (ECF No. 24) which seeks relief pursuant to Maine Rule of Civil Procedure 80B, and a Motion to Dismiss the Complaint (ECF No. 25) in which they joined the arguments previously asserted by the Town in support of its Motion to Dismiss (ECF No. 9).

The issues raised by the parties in this proceeding largely overlap with the issues raised by the same parties in a proceeding pending in the Lincoln County Superior Court, docket no. WISCSC-2018-AP-1. *See* ECF No. 9 at 11; ECF No. 15 at 2. The Superior Court action was ordered stayed pending resolution of this federal action. *See* ECF No. 15 at 2.

## B. Coastal Maine's Development Permit

According to the Complaint, Coastal Maine operates a nationally recognized botanical garden. In an effort to accommodate a growing number of visitors, Coastal Maine sought to expand its permitted use of its property. Specifically, Coastal Maine sought the necessary permits to construct a new visitor center, a new entrance with a drop-off plaza and pedestrian bridge, and new visitor and staff parking lots, as well as to improve the existing entrance road. The Town's Planning Board unanimously approved Coastal Maine's development permit. With the permit in hand, Coastal Maine began construction in early 2017. The Anthonys appealed the Planning Board's permitting decision to the Town's Board of Appeals.

The Board of Appeals initiated hearings on the appeal in February 2017. It then conducted a review process which included public fact-gathering hearings and the receipt of expert evidence. On September 21, 2017, the Board closed the evidentiary record and established a process for deliberations. On the same day, the Board of Appeals conducted a straw poll, which resulted in a 4-1 initial decision in favor of upholding the permit.

Sometime after the September 21 meeting, two members of the Board of Appeals each conducted private tours of the development site and the Anthonys' property (hereinafter, the "*ex parte* site visits"), that were guided by the Anthonys. The *ex parte* site visits became known to the full Board of Appeals on October 4. In response, the Board as a whole sought to cure the potential prejudice of the *ex parte* site visits by conducting an on-the-record site visit on October 17. Also on October 17, during a meeting of the Board of Appeals, one of the members who had

3

participated in an *ex parte* site visit stated that he intended to withdraw his support for the permit. During the same meeting, the other member who had participated in an *ex parte* site visit stated that he had routinely engaged in independent evidence gathering when ruling on matters before the Board of Appeals, and that he believed Board members were entitled to identify and rely upon information outside the record when ruling on matters before the Board.

Coastal Maine submitted a letter to the Board dated November 7, which requested that the two members who engaged in *ex parte* site visits be recused from the final vote on the appeal, which was scheduled for November 9. At the November 9 meeting, the Board reviewed details of the *ex parte* site visits, and voted unanimously not to require the recusal of any of its members.

The Board ultimately voted by a 3-to-2 margin to rescind Central Maine's permit. The Board's decision contained two parts. Part one of the decision, which was the basis for the Board's ultimate decision to rescind the permit, found that the proposed development was not a permitted use in the Watershed Overlay Zone. Part two of the decision found that Coastal Maine's development application met all of the remaining relevant development review criteria contained in the Boothbay Zoning Ordinance. Had the two members who participated in the *ex parte* site visits been recused, the remaining Board members' votes suggest that the Board would have upheld the permit by a vote of 2-to-1.

**C.     The Proposed Consent Decree**

In March 2018, settlement negotiations yielded an agreement between Coastal Maine and the Town, which they now seek approval of through their Joint Motion for

4

Entry of a Consent Decree (ECF No. 29). The proposed Consent Decree was approved by a vote of the Town's Board of Selectman in late March, *see* ECF No. 29 at 2, and if approved by the Court, the Decree will vacate the Board of Appeals' decision and authorize Coastal Maine to "complete all construction pursuant to the Development Permit approved by the Boothbay Planning Board on December 15, 2016 and as amended April 19, 2017 and all associated building permits and, thereafter, to use all structures and facilities on its current property . . . in compliance with all applicable law, ordinances, regulations, licenses, permits and approvals." ECF No. 29-1 at ¶ 2. The proposed Consent Decree also provides that Coastal Maine will dismiss all claims against the Town, rendering the Town's Motion to Dismiss moot. *See* ECF No. 29-1 at ¶ 8.

A hearing on the proposed Consent Decree and the Anthonys' Motion to Dismiss was held on April 5, 2018. *See* ECF No. 30. Thereafter, the Anthonys filed their Response in Opposition to the Proposed Consent Decree, arguing that the Decree's entry will prevent them from mounting their challenge to part two of the Board's decision pursuant to Rule 80B of the Maine Rules of Civil Procedure. *See* ECF No. 33. In response, Coastal Maine and the Town argued at the April 5th hearing, that the Consent Decree will not have that effect, and, to make that a certainty, they subsequently proposed revising the Consent Decree to explicitly acknowledge and preserve the Anthonys' pending Rule 80B appeal in state court.[1]

---

[1] Initially, the relevant portion of the proposed Consent Decree stated:

> 2. Current Construction. CMBG is allowed to complete all construction pursuant to the Development Permit approved by the Boothbay Planning Board on December 15, 2016 and as amended April 19, 2017 and all associated building permits and, thereafter, to use all structures

5

*See* ECF No. 35 at 3. For the reasons explained below, I grant the Joint Motion for Entry of Consent Decree.

## II. LEGAL ANALYSIS

**A.      Jurisdiction**

"[A] Consent Decree must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction." *Local No. 93, Int'l Assoc. of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986). Thus, as a threshold matter, the Court must be satisfied that it has jurisdiction in order to proceed. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.") (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). Generally, when a party asserts federal question jurisdiction, "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* at 89 (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)).

---

and facilities on its current property (the "Property") in compliance with all applicable laws, ordinances, regulations, licenses, permits and approvals. The Board of Appeals decision dated November 9, 2017 is vacated. Any further development beyond the December 15, 2016 Planning Board approval, as amended, will need to comply with then existing law. Parking lots within the Watershed Overlay Zone shall be monitored for stormwater quality in accordance with the monitoring plan as set forth in Paragraph 6 below.

ECF No. 35 at 3. The updated Consent Decree replaces the sentence "The Board of Appeals decision dated November 9, 2017 is vacated[]" with the following language:

That portion of the November 9, 2017 Board of Appeals decision concluding that CMBG's use is not an allowed use within the Watershed Overlay Zone is vacated. Nothing herein is meant to bar the Intervenors from litigating their pending Rule 80B appeal in state court, *Vaughn C. Anthony, et als. v. Town of Boothbay, et al.*, Docket No. WISSC-AP-2018-02.

*Id.*

Here, Coastal Maine's Complaint – in Count I – asserts a federal due process violation as the basis for federal question jurisdiction. ECF No. 1 at ¶¶ 57-64. Specifically, the Complaint – as characterized by Coastal Maine in its Opposition to the Motion to Dismiss – alleges a procedural due process violation based on the Board of Appeals' failure to require the recusal of the two members who participated in *ex parte* site visits of the properties. *See* ECF No. 14 at 5. Coastal Maine avers that this deprived it of due process because the *ex parte* site visits were conducted after the Board of Appeals had closed the evidentiary record, and the visits were led by the Anthonys, who were, at the time, actively opposing Coastal Maine's permit application. *Id.*

Federal courts do not "sit as a super zoning board or a zoning board of appeals." *Raskiewicz v. Town of New Boston*, 754 F.2d 38, 44 (1st Cir. 1985); *see also Vill. of Belle Terre v. Boraas*, 416 U.S. 1, 13 (1974) (Marshall, J., dissenting). Thus, cases involving "run of the mill dispute[s] between a developer and a town planning agency" do not rise to the level of a federal due process violation. *Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982). Nonetheless, federal due process challenges to land use and zoning decisions are not *per se* dead on arrival. Although an "error by a zoning board is . . . not federally actionable in and of itself," it may become actionable if the allegedly violative decision is "'tainted with fundamental procedural irregularity, racial animus, or the like.'" *Chongris v. Bd. of Appeals of Town of Andover*, 811 F.2d 36, 42 (1st Cir. 1987) (quoting *Creative Env'ts*, 680 F.2d at 833).

The constitutional claim asserted by Coastal Maine in this case – arising from the Board of Appeals' decision not to require the recusal of the two members who engaged in *ex parte* site visits led by opponents of the proposed development – does not, on its face, "clearly appear[] to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . wholly insubstantial and frivolous."[2] *Steel Co.*, 523 U.S. at 89 (1998). Further, it is reasonable to interpret the Complaint's allegations as challenging conduct that could, depending on all of the attendant circumstances, rise to the level of a fundamental procedural irregularity. Because the Complaint's allegation of a federal controversy is not patently frivolous, federal question jurisdiction exists and it is appropriate for me to consider the proposed Consent Decree without separately deciding whether the Complaint fails to state a claim upon which relief may be granted. *See Chiplin Enters., Inc. v. City of Lebanon*, 712 F.2d 1524, 1528 (1983) (concluding that a federal complaint challenging a zoning decision which failed to state a viable federal claim should have been dismissed by the trial court for failure to state a federal claim, and not for lack of federal subject matter jurisdiction).

**B.     Evaluation of the Proposed Consent Decree**

"A consent decree 'embodies an agreement of the parties,' that they 'desire and expect will be reflected in, and be enforceable as, a judicial decree.'" *Aronov v. Napolitano*, 562 F.3d 84, 90-91 (1st Cir. 2009) (quoting *Frew ex rel. Frew v. Hawkins,*

---

[2]  This standard is less demanding than the Fed. R. Civ. P. 12(b)(6) standard for failure to state a claim upon which relief may be granted. To survive a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

540 U.S. 431, 437 (2004)). A consent decree, unlike a private settlement agreement, "may ultimately be enforceable by contempt." *Id*. Thus, "[t]he parties to a consent decree expect and achieve a continuing basis of jurisdiction to enforce the terms of the resolution of their case in the court entering the order." *Id*. at 91 (internal quotation marks omitted). It follows that "[c]ourt approval of a Consent Decree must involve some appraisal of the merits." *Id*.

In assessing the merits, the "[C]ourt's discretion is restrained by the clear policy in favor of encouraging settlements." *Durrett v. Housing Authority of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (internal quotation marks omitted). "Subject to this principle, the district court must assure itself [(1)] that the parties have validly consented; [(2)] that reasonable notice has been given possible objectors; [(3)] that the settlement is fair, adequate, and reasonable; [(4)] that the proposed decree will not violate the Constitution, a statute, or other authority; [(5)] that it is consistent with the objectives of Congress; and, [(6)] if third parties will be affected, that it will not be unreasonable or legally impermissible as to them." *Id.*; *see also Pike Industries Inc. v. City of Westbrook*, 45 A.3d 707, 717 (Me. 2012). I consider each of the *Durrett* criteria in turn.

### 1. Valid Consent

Coastal Maine and the Town filed the Consent Decree after having secured a vote by the Town's Board of Selectman at a public hearing held on March 28, 2018, approving of the same. *See* ECF No. 29 at 2. Based on the representations of their attorneys, valid consent has been given by both Coastal Maine and the Town.

### 2. Reasonable Notice

The Anthonys received notice of the agreement on March 19, 2018. *See id.* On March 23, 2018, a public notice was posted at the Boothbay Town Office alerting the public to the Board of Selectman's March 28, 2018 hearing. *See id.* On the same day, copies of the proposed Consent Decree were made available to the public at the Boothbay Town Office and a copy was provided directly to counsel for the Anthonys. *See id.* at 2-3. Thus, reasonable notice was provided.

### 3. Whether the Proposed Decree is Fair, Adequate, and Reasonable

Coastal Maine and the Town contend that the Consent Decree is fair, adequate and reasonable as to both parties because its ends their time-consuming and costly dispute. Additionally, they contend that the agreement benefits the Town because it (1) resolves Coastal Maine's attorneys' fee claim against it "with an additional indemnity provided by Coastal Maine if necessary," *id.* at 3; (2) permanently protects 75 acres of land owned by Coastal Maine through a conservation easement; and (3) establishes an enforceable storm water monitoring plan. *Id.* at 3. As for Coastal Maine, they contend that the agreement provides clarity about its development plans and allows it "to complete pending development work in time to avoid financial losses caused by a delay of the [Coastal Maine's] seasonal opening." *Id.* at 4. A plain reading of the Consent Decree supports Coastal Maine and the Town's contentions. Furthermore, the Anthonys have not suggested that the process and negotiations resulting in the Consent Decree were unfair in any respect, and there is no indication that the negotiations were not conducted at arms' length.

### 4. Whether the Proposed Decree Violates the Constitution, a Statute, or Other Authority

The fourth *Durrett* criterion requires the Court to ensure that the proposed decree does not violate the Constitution, a statute, or other authority. I construe "other authority" to include jurisprudence, *see United States v. City of Miami, Fla.*, 664 F.2d 435, 441 (5th Cir. 1981) (per curiam), specifically, the jurisprudential edict that federal courts should not act as "a super zoning board or a zoning board of appeals." *Raskiewicz*, 754 F.2d at 44; *see also Vill. of Belle Terre*, 416 U.S. at 13 (Marshall, J., dissenting).

The Court's continuing jurisdiction to enforce the Consent Decree arguably raises the specter of the Court being asked to intercede in run-of-the-mill zoning issues. However, in *Durrett*, the First Circuit Court of Appeals responded to a similar concern about a district court's enforcement role under a consent decree that could potentially require rulings on "weekly or monthly motions relating to many non-federal matters of a petty nature." *Id.* at 604. The Court expressed "every confidence in the ability of the district court to winnow out any attempted proceedings that belong in state court." *Id.* at 605. Here, the likelihood that run-of-the-mill zoning issues will be presented as enforcement issues in this Court is low, particularly given the parallel state court proceeding and the available state process for land use violations, M.R. Civ. P. 80K, which should provide state forums for most enforcement questions.

### 5. Consistent With the Objectives of Congress

The Consent Decree is consistent with the important public policy of encouraging the settlement of disputes, and there is no indication that it is inconsistent with the objectives of Congress or any federal, state, or local laws.

### 6. Whether the Proposed Decree is Unreasonable or Legally Impermissible as to Third Parties Affected by It

As previously discussed, the Anthonys object to the proposed Consent Decree, arguing that it may frustrate or foreclose the claims they wish to assert in the Rule 80B proceeding in the Maine Superior Court. *See* ECF No. 33 at 4-5. The proposed Consent Decree does not, however, decide the Anthonys' objections to the project. At the April 5 hearing, both Coastal Maine and the Town expressly stipulated that the Consent Decree is not intended to foreclose the Anthonys from proceeding on their claims pending in the Maine Superior Court. As amended, the Consent Decree explicitly acknowledges that it is not "meant to bar the Intervenors from litigating their pending Rule 80B appeal in state court." *See* ECF No. 35 at 3. This express acknowledgment ensures that the Anthonys will be free to challenge the Town's approval of the permit in the Rule 80B proceeding in the Maine Superior Court.

Ideally, the Consent Decree would resolve the claims of all parties, including intervenor parties such as the Anthonys. Their participation and agreement is, however, not required. *See Local No. 93*, 478 U.S. at 529 ("[W]hile an intervenor is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree, it does not have power to block the decree merely by

withholding its consent."). Here, for the reasons I have explained, the Anthonys' right to pursue their objections to the project through Rule 80B of the Maine Rules of Civil Procedure is preserved by the Consent Decree. *Id.* Thus, my approval of the Consent Decree is not unreasonable as to the Anthonys' interests. *Id.*

### III. CONCLUSION

For the foregoing reasons, the Joint Motion Seeking Approval of Consent Decree (ECF No. 29) is **GRANTED**. Coastal Maine and the Town shall file the revised Consent Decree by Tuesday, April 24, 2018.

In addition, a case management conference will be scheduled with counsel to address (A) whether the Anthonys' Motion to Dismiss should be dismissed as moot; (B) the status of the Anthonys' cross-claim; and (C) any other issues a party wishes to raise regarding the future course of this proceeding. If the parties are in agreement as to items (A) and (B) and have no other issues to raise at this time, they may submit a proposed Order for the Court's consideration in lieu of the scheduling of a conference.

**SO ORDERED.**

**Dated this 23rd day of April 2018.**

                                                        **/s/ JON D. LEVY**
                                                    **U.S. DISTRICT JUDGE**